[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendants move to dismiss count five of the plaintiff's amended complaint for lack of subject matter jurisdiction because the plaintiff has not exhausted her administrative remedies. Count five alleges that on April 8, 1997, the defendants discharged her from her employment as a housekeeper and home aide "because she had requested a leave to take care of her son in violation of the stated policy of the State of Connecticut as embodied in C[onnecticut] G[eneral] S[tatutes] § 31-51kk." The defendants also move to strike counts five and six for failure to state a claim upon which relief may be granted. Count six alleges that the defendants breached the covenant of good faith and fair dealing by discharging the plaintiff in violation of General Statutes §31-51kk.
A motion to strike is the procedural vehicle by which a party may challenge a pleading that is legally insufficient on its face, but which would establish a cause of action if facts that may exist were properly pleaded. In contrast, a motion to dismiss is the procedural vehicle to attack the jurisdiction of the court. A motion to dismiss essentially asserts that, as a matter of law and fact, the plaintiff cannot state a cause of action that is properly before the court. Gurliacci v. Mayer, 218 Conn. 531, 544,590 A.2d 914 (1991); Third Taxing District v. Lyons, 35 Conn. App. 795, 803,647 A.2d 32, cert. denied, 231 Conn. 936, 650 A.2d 173 (1994).
General Statutes § 31-51kk is the definitional section of the Family and Medical Leave Act of Connecticut (FAMLAC). General Statutes § 31-51ll (3) of FAMLAC provides that under certain circumstances, an "eligible employee," as defined in General Statutes § 31-51kk(1), "shall be entitled to a total of sixteen work-weeks of leave during any twenty-four-month period . . . [i]n order to care for . . . a son . . . of the employee, if such . . . son . . . has a serious health condition," as defined in General Statutes § 31-51kk(10). General Statutes § 31-51pp provides, inter alia, that it shall be a prohibited act to discharge an employee for exercising his or her rights under FAMLAC.
General Statutes § 31-51qq provides: "On or before January 1, 1997, the Labor Commissioner shall adopt regulations, in accordance with the provisions of chapter 54, to establish procedures and guidelines necessary to implement the provisions of sections 5-248a
and 31-51kk to 31-51qq, inclusive, including, but not limited to, procedures for hearings and redress, including restoration and restitution, for an employee who believes that there is a violation CT Page 1599 by the employer of such employee of any provision of said sections, and procedures for the periodic reporting by employers to the commissioner of their current experience with leaves of absence taken pursuant to said sections. In adopting such regulations, the commissioner shall make reasonable efforts to ensure compatibility of state regulatory provisions with similar provisions of the federal Family and Medical Leave Act of 1993 and the regulations promulgated pursuant to said act."
Consonant with this mandate, the Labor Commissioner enacted administrative regulations effective August 29, 1996. See Regs., Conn. State Agencies §§ 31-51ee-1 to 31-51ee-8. These regulations provide for the filing of a complaint with the Labor Department by an employee who believes that his employer has violated a provision of FAMLAC, an investigation of the complaint by the Labor Department, notice to an employer of a contested case where, as a result of such investigation, the Labor Department has reason to believe that an employer has violated FAMLAC, a contested case hearing, and a final decision by the Labor Commissioner. Section31-51ee-7 of the Regulations of Connecticut State Agencies provides:
 Where, in his final decision, the Commissioner concludes that an employer has;
 (1) violated any provision of the Act with respect to an eligible employee, or
 (2) has discharged, or caused to be discharged, or in any manner discriminated against an eligible employee for exercising rights afforded to him by the Act, the Commissioner may order the employer to comply with the applicable requirements of the Act and to provide such relief as the Commissioner determines will remedy the harm incurred by the complainant as a result of the employer's violation, discharge or discrimination. Such relief may include but is not limited to restoration of any rights, benefits, entitlements or protections afforded to the employee by the Act, reinstatement to employment, back pay and any other monetary compensation for any loss which was the direct result of the employer's violation, discharge or discrimination.
I CT Page 1600
The basis of the defendants' motion to dismiss is that the plaintiff has failed to exhaust this administrative remedy. "It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter. . . . The exhaustion doctrine reflects the legislative intent that such issues be handled in the first instance by local administrative officials in order to provide aggrieved persons with full and adequate administrative relief, and give the reviewing court the benefit of the local board's judgment. . . . It also relieves courts of the burden of prematurely deciding questions that, entrusted to an agency, may receive a satisfactory administrative disposition and avoid the need for judicial review." (Citations omitted; internal quotation marks omitted.) Simko v. Ervin,234 Conn. 498, 503-504, 661 A.2d 1018 (1995).
The plaintiff has not challenged the adequacy of the administrative remedy provided by the administrative regulations promulgated by the Labor Commissioner pursuant to General Statutes § 31-51qq. Rather, the plaintiff insists that she is not seeking relief under the statute but is seeking relief for the tort of wrongful discharge at common law and breach of contract. Since the court undoubtedly has jurisdiction over such common law claims;McCutcheon Burr, Inc. v. Berman, 218 Conn. 512, 527, 590 A.2d 438
(1991); Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471,427 A.2d 385 (1980); the motion to dismiss is denied.
 II
The defendants move to strike counts five and six, claiming that those counts to not allege a legally viable cause of action.
There is no cause of action for discharging an at-will employee at common law, except in the narrow circumstance where the discharge involves an impropriety derived from some important violation of public policy grounded in a statute or constitutional provision or in a judicially conceived notion of public policy.Faulkner v. United Technologies Corp. , 240 Conn. 576, 580-581,693 A.2d 293 (1997); Morris v. Hartford Courant Co., 200 Conn. 676,679-680, 513 A.2d 66 (1986); Magnan v. Anaconda Industries, Inc.,193 Conn. 558, 572, 479 A.2d 781 (1984); Sheets v. Teddy's FrostedFoods, Inc., supra, 179 Conn. 480. There is no public policy against discharging an at-will employee for taking leave of her employment to care for an ill family member, apart from the Familyand Medical Leave Act. However, in that Act the public CT Page 1601 policy — the right to take leave of one's employment to care for a sick family member without losing one's employment — is circumscribed, inter alia, to "eligible employees" of larger, statutorily defined "employers." General Statutes § 31-51kk (1), (4).
The plaintiff argues that the statute only circumscribes the administrative remedy, and that "the court should not ignore the statement of policy that [the statute] represents," citing Parsonsv. United Technologies, Inc., 243 Conn. 66, 79, 700 A.2d 655
(1997). In Parsons, the Supreme Court held that an employee could maintain an action for wrongful termination based primarily on General Statutes §§ 31-49 and 31-370, which mandate that employers provide a safe workplace and be responsible for the safety of employees. Id., 77. In construing the statutes, the court rejected the trial court's conclusion that the statutes limited the scope of the policy behind the statutes to workplaces in the state under the control of the employer. The language of the statutes led the court to conclude that the legislature had established the broader policy that all employers who do business in the state are responsible for the safety of their employees while performing their duties regardless of where the employees are working. Parsons v. UnitedTechnologies, Inc., supra, 243 Conn. 82.
"Given the inherent vagueness of the concept of public policy, it is often difficult to define precisely the contours of the exception." Morris v. Hartford Courant Co., supra, 200 Conn. 680. If the policy is grounded in a statute, however, the contours of the public policy is to be found in the language of the statute.Parsons v. United Technologies, Inc., supra, 243 Conn. 81. By its own terms, FAMLAC only applies to a limited segment of the workforce, those employed by an employer with 75 or more employees. General Statutes § 31-51kk (1) and (4). There is no statement of policy embodied in FAMLAC that an employer of a small number of employees must provide family leave to its employees or face liability for discharging an employee who seeks to take such a leave.
Statements made in the legislature during debates on the bill in 1990 support this conclusion. In enacting FAMLAC, the legislature determined that it was no longer socially desirable to force employees of certain employers to choose between their jobs and their families' needs. The goal of FAMLAC was to provide job security to employees faced with family illness, but not at the complete expense of small employers who do not have the flexibility CT Page 1602 of larger employers who can more easily accommodate long-term absences. See, e.g., 32 H.R. Proc., Pt. 38, 1989 Sess., pp. 13726-29 (comments of Rep. Joseph A. Adamo and Rep. Gary W. Berner); 32 S. Proc., Pt. 4, 1989 Sess., pp. 1369-70 (comments of Sen. James H. Maloney and Sen. Philip S. Robertson). The limitation of the statutory scheme that only eligible employees of larger businesses are protected is an integral part of the policy embodied in the statute. With its "wrongful discharge" provision in § 31-51pp, FAMLAC seeks to strike a balance between the legitimate interests of employers and employees, like the tort of wrongful discharge itself. Battista v. United Illuminating Co., 10 Conn. App. 486,498, 523 A.2d 1356, cert. denied, 204 Conn. 802, 525 A.2d 965, and204 Conn. 803, 528 A.2d 1151 (1987).
In 1996, the statute was amended to conform with the federal statute as much as possible without affecting any substantive rights. Public Act No. 96-140. However, the Connecticut standard for covered employers remained at 75 employees even though the federal standard was 50 employees. David L. Hemond, Chief Attorney for the Connecticut Law Revision Commission, stated during the hearings on the bill that "who is an employer is critical to who is eligible for the underlying substantive rights. By using the Connecticut definition, the bill retains the Connecticut balance of substantive rights." Conn. Joint Standing Committee Hearings, Judiciary, Part 7, 1996 Sess., p. 1804.
To allow the plaintiff's claim would extend the legislative mandate beyond what the legislature intended to achieve in this area after careful consideration of the interests at stake and the best way to balance them. There was some discussion in the debates that the limit might eventually be lowered, but not until its effects on the workplace were better known. 32 H.R. Proc., supra, p. 13727 (comments of Rep. Joseph Adamo). The legislature has approached the issue cautiously and the court should be equally cautious not to override the limits the legislature placed on the policy and the legislative compromise that was fashioned.
For these reasons, the defendants' motion to strike count five is granted.
 II
An at will employee[1] has no cause of action for breach of the covenant of good faith and fair dealing, subject only to the same narrow exception for public policy reasons as wrongful discharge. CT Page 1603Magnan v. Anaconda Industries, Inc., 193 Conn. 558, 572,479 A.2d 781 (1984). Because FAMLAC does not provide a public policy reason to prevent her discharge, neither can it support her claim of a breach of the covenant of good faith and fair dealing. For this reason, the defendants' motion to strike count six is granted.
The defendants' motion to dismiss is denied. The defendants' motion to strike is granted.
BY THE COURT
Bruce L. Levin Judge of the Superior Court